IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                  No. CV 00-1338 JP/RLP

ITEM 1:  A 1990 JEEP CHEROKEE;
ITEM 2:  $ 40,000 IN U.S. CURRENCY;
ITEM 3:  $ 50,000 IN U.S. CURRENCY;
ITEM 4:  $19,830 IN U.S. CURRENCY;
ITEM 5:  $19,882.40 IN U.S. CURRENCY;
ITEM 6:  $8,753.11 IN U.S. CURRENCY; AND
ITEM 7:  JEWELRY AND MISC. PERSONAL ITEMS,

        Defendants,

and

OLAF JUDA,

        Claimant.

## MEMORANDUM OPINION AND ORDER

On December 20, 2001 Plaintiff United States of America filed a Motion for Summary Judgment Regarding the Right, Title, and Interest of Claimant Olaf Juda (Doc. No. 18). Based on a careful review of the pleadings, the evidence of record, the arguments of counsel for Plaintiff and of Claimant *pro se*, and the relevant case law, I find that the motion for summary judgment is not well-taken and should be denied.

In its motion for summary judgment, Plaintiff seeks to forfeit the right, title and interest of Claimant Olaf Juda in the Defendant Items of property under 21 U.S.C. § 881(a)(6). The property consists of: (1) a 1990 Jeep Cherokee; (2) $40,000 in U.S. currency; (3) $50,000 in

U.S. currency; (4) $19,830 in U.S. currency; (5) $19,882.40 in U.S. Currency; (6) $8,753.11 in U.S. currency; and (7) jewelry and miscellaneous personal items.

The applicable forfeiture statute provides:

> The following shall be subject to forfeiture to the United States and no property right shall exist in them: . . .
> (6) All moneys . . . or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance, . . . proceeds traceable to such an exchange, and all moneys . . . used or intended to be used to facilitate any violation of [the Controlled Substances Act] . . ..

21 U.S.C. § 881(a)(6).

Property is subject to forfeiture if "a nexus existed between the property and specified illegal activity sufficient to justify forfeiture." United States v. Wagoner County Real Estate, 278 F.3d 1091, 1097 (10th Cir. 2002). For cases commenced prior to August 23, 2000, the government has to establish "probable cause" to believe that the property is subject to forfeiture. United States v. $149,442.43 in U.S. Currency, 965 F.2d 868, 876-77 (10th Cir. 1992). The Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), applicable to cases "commenced" on or after August 23, 2000, raises the government's burden of proof "to establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1); United States v. Lot Numbered One of Lavaland Annex, 256 F.3d 949, 956 (10th Cir. 2001). The Court interprets "commenced" to refer to commencement of a case under Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court."). *See* United States v. Six Negotiable Checks, 207 F.Supp.2d 677, 682-83 (E.D. Mich. 2002). The Complaint was filed on September 25, 2000. Thus, CAFRA applies, and the government must prove its case by a preponderance of the evidence, not just by establishing probable cause.

Where, as here, the government's theory of forfeiture is that the items of property are proceeds of a criminal offense, to prove that the property is subject to forfeiture, the government must "establish [by a preponderance of the evidence] that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3). If the government meets its burden of proof, and if the claimant asserts as an affirmative defense that he is an innocent owner, the burden then shifts to the claimant to show by a preponderance of the evidence that he is an innocent owner.

> An innocent owner's interest in property shall not be forfeited under any civil forfeiture statute. The claimant shall have the burden of proving that the claimant is an innocent owner by a preponderance of the evidence.

18 U.S.C. § 983(d)(1).

> With respect to a property interest acquired after the conduct giving rise to the forfeiture has taken place, the term 'innocent owner' means a person who, at the time that person acquired the interest in the property --
> (i) was a bona fide purchaser or seller for value (including a purchaser or seller of goods or services for value); and
> (ii) did not know and was reasonably without cause to believe that the property was subject to forfeiture.

18 U.S.C. § 983(d)(3)(A).

Plaintiff contends there is a substantial connection between the Defendant Items of property and illegal drug trafficking by Mr. Juda, and that the disputed nexus issue was decided in a previous and related case, <u>Juda v. Nerney, et. al.</u>, No. Civ 96-584 JP/LFG. Plaintiff asserts that Mr. Juda had a full and fair opportunity to litigate the nexus issue in that previous case, and therefore that the doctrine of collateral estoppel should be applied to the nexus issue, compelling summary judgment in favor of Plaintiff in this case. Mr. Juda contends that collateral estoppel

3

cannot be used because the nexus issue was decided in a proceeding that was void, and because a different standard of proof applied in the previous case. This dispute necessitates a brief review of the complex history behind this case.

Background.

The government's attempts to forfeit the property involved in this case have traversed a long and convoluted procedural path. The property was seized in New Mexico following Mr. Juda's arrest in California in 1991.[1] The United States Customs Service commenced seven separate administrative forfeiture proceedings in New Mexico under 19 U.S.C. §§ 1608 and 1607(a), and 21 U.S.C. § 881(a), one for each item of property. But instead of sending the forfeiture notices to Mr. Juda at his place of incarceration in California, Customs sent the notices to Mr. Juda's former address in Santa Fe, New Mexico. Some of the notices were returned to Customs as undeliverable; others were forwarded to a more current address for Mr. Juda in Taos, New Mexico. At least one notice forwarded to Taos made its way to Mr. Juda in jail through his attorneys, but Mr. Juda did not contest any of the forfeitures. In October and December 1991, all the items of property were declared administratively forfeited.

In December 1993 Mr. Juda began sending Freedom of Information Act requests to various officials regarding the seizure of his property. In 1995 Mr. Juda filed a lawsuit in federal court in California seeking the return of his forfeited property under Fed. R. Crim. P. 41(e). That case was transferred to this Court in 1996, <u>Juda v. Nerney, et al.</u>, CV 96-584 JP/LFG. The case was referred for review and recommendation to a Magistrate Judge, who determined that Mr.

---

[1] Mr. Juda is now serving a long sentence in a federal prison in California after pleading guilty to drug smuggling and arson on the high seas as a result of the 1991 arrest.

Juda had received actual notice of the forfeitures, and recommended that the case be dismissed. This Court adopted the Magistrate Judge's findings and conclusions and dismissed the case.

On appeal, the Tenth Circuit Court of Appeals reversed, stating that the finding of actual notice was clearly erroneous because the record established only that Mr. Juda had received a copy of one of the forfeiture notices through his attorney. Juda v. Nerney, 149 F.3d 1190, 1998 WL 317474, *7 (10th Cir. June 16, 1998) (unpublished) ("Juda I"). The Tenth Circuit remanded the case to this Court to determine whether Mr. Juda had received actual notice of the rest of the forfeitures before their completion. Id. Citing United States v. Deninno, 103 F.3d 82, 86 (10th Cir. 1996), the Tenth Circuit also directed this Court, in the event Mr. Juda had not received actual notice, to proceed to evaluate the merits of Mr. Juda's arguments why the property was not subject to forfeiture. Id. The Tenth Circuit stated: "It would serve no purpose to upset the forfeitures for procedural faults if Juda has no basis for return of the property." Id.

In accordance with the mandate from the Tenth Circuit, the Magistrate Judge held an evidentiary hearing on October 16, 1998. At that hearing, the United States did not attempt to show that Mr. Juda had received actual notice. Instead, there was testimony from Customs agents and from Mr. Juda on the merits, after which the Magistrate Judge found that Mr. Juda's personal property constituted proceeds of criminal activity and was subject to forfeiture. On February 11, 1999, this Court adopted the Magistrate Judge's recommendation and again dismissed the case. CV 96-584 (Doc. No. 35).

On appeal, the Tenth Circuit discussed the impact of an intervening decision, Clymore v. United States, 164 F.3d 569 (10th Cir. 1999), on this case. In Clymore, the Tenth Circuit held that the effect of constitutionally ineffective notice in an administrative forfeiture is that the

5

administrative forfeiture is "void," not merely voidable, "and must be vacated." Id. at 573. Further, where an obvious statute of limitations problem exists, as in this case, it is error to proceed to decide the merits of a procedurally defective administrative forfeiture. Id. at 574. The Tenth Circuit thus vacated the forfeitures of Mr. Juda's personal property and remanded to this Court to determine if the government had a valid argument against operation of the statute of limitations. Juda v. Nerney, 211 F.3d 1278, 2000 WL 419823 at *3 (10th Cir. April 17, 2000) (unpublished) ("Juda II"). The Tenth Circuit stated that the forfeited property, or its monetary equivalent, should be returned to Mr. Juda if the statute of limitations barred the government's claims. Id.

On August 21, 2000 this Court adopted the Magistrate Judge's recommended disposition that under the doctrine of equitable tolling, the statute of limitations for the United States to bring a forfeiture action was tolled from October 27, 1991 until April 17, 2000 with respect to all items of property except the jewelry (Defendant Item 7), and that it was tolled with respect to the jewelry from December 13, 1991 until April 17, 2000. CV 96-584 (Doc. Nos. 68, 59). On May 8, 2001, the Tenth Circuit affirmed this ruling. On September 25, 2000 the United States filed the Complaint in the present case to judicially forfeit the Defendant Items of property under 21 U.S.C. § 881(a)(6).

Summary Judgment Standards.

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a

material fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Ingels v. Thiokol Corp., 42 F.3d 616, 620 (10th Cir. 1994), *quoting* Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.

The burden of showing that no genuine issue of material fact exists is borne by the moving party. *See* Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). The court draws all reasonable inferences in favor of the nonmoving party. *See* Ortiz v. Norton, 254 F.3d 889, 893 (10th Cir. 2001); Curtis v. Oklahoma City Public Sch. Bd. of Ed., 147 F.3d 1200, 1214 (10th Cir. 1998).

Applicability of Doctrine of Collateral Estoppel.

Collateral estoppel applies when an issue of ultimate fact has once been determined by a valid and final judgment; the doctrine prevents that same issue from being litigated again in a later suit on a different cause of action involving a party to the first case. Ashe v. Swenson, 397 U.S. 436, 443 (1970); Robinson v. Volkswagenwerk AG, 56 F.3d 1268, 1272 (10th Cir. 1995). The rationale underlying collateral estoppel includes protecting litigants from the burden of relitigating an identical issue with the same party or that party's privy, promoting judicial economy by preventing needless litigation, and preventing inconsistent results. *See* Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326-27 (1979). The party seeking to apply collateral estoppel must prove the following elements: (1) the issue previously decided is identical with the one presented in the action in question; (2) the prior action has been finally adjudicated on the merits; (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action. Harrison v. Eddy Potash, Inc., 248 F.3d 1014, 1022 (10th

Cir. 2001); Dodge v. Cotter Corp., 203 F.3d 1190, 1198 (10th Cir. 2000); Murdock v. Ute Indian Tribe of Uintah & Ouray Reservation, 975 F.2d 683, 687 (10th Cir. 1992).

A valid final judgment on the merits is required to satisfy the second element of the doctrine of collateral estoppel. *See* Clough v. Rush, 959 F.2d 182, 187 (10th Cir.1992). *See also,* United States v. Rodriguez-Aguirre, 264 F.3d 1195, 1211 n. 12 (10th Cir. 2001) ("'Void' judgments are generally open to challenge at any time.") (*citing* VTA, Inc. v. Airco, Inc., 597 F.2d 220, 224-25 (10th Cir. 1979)); In re Vierkant, 240 B.R. 317, 325 (8th Cir. BAP 1999) (void default judgment cannot be given collateral estoppel effect); In re Wilcox, 229 B.R. 411, 416 (N.D. Ohio 1998) ("In terms of collateral estoppel principles the distinction between void and voidable judgments is of upmost importance as void judgments do not have any preclusive effect. On the other hand, voidable judgments do have preclusive effect, and may not be collaterally attacked.").

After the October 16, 1998 evidentiary hearing in CV 96-584, the Magistrate Judge made, and this Court subsequently adopted, findings of fact and conclusions to the effect that the property was subject to forfeiture because it constitutes the proceeds of the sale of illegal drugs and that there was a nexus between Mr. Juda's drug trafficking and the property being forfeited.[2]

The requirement that the prior action have been finally adjudicated on the merits is a basic one. Collateral estoppel applies only when a fact has once been determined by a valid and final judgment. Plaintiff asserts that this Court reached a final adjudication on the merits in Juda v.

---

[2] Mr. Juda testified that he was involved in three separate large drug transactions. One in 1987 involved the importation of marijuana delivered off the coast of Oregon. A second transaction took place in 1989 with the delivery of drugs to Canada, and the third transaction in 1991 resulted in Mr. Juda's arrest and conviction (CV 96-584, Doc. No. 32, ¶ 28). Further, Mr. Juda testified and admitted that the money used to acquire Items 1 through 7 came from the 1989 drug trafficking transaction. Id.

8

Nerney, No. CV 96-584. Plaintiff argues that in adjudicating Mr. Juda's Rule 41(e) motion after the first remand, this Court determined that Mr. Juda's claim should be dismissed because the personal property items were contraband and the proceeds of Mr. Juda's illegal drug activities, and that the adjudication was necessary to the judgment. What the United States fails to address is the fact that on appeal, the Tenth Circuit did not reach the merits of this Court's determination; rather, it remanded on the issue of the statute of limitations. There has never been a valid and final adjudication on the merits of whether the United States has a legitimate claim to the items of property sought to be forfeited in this case.

Additionally, with regard to the first element of the doctrine of collateral estoppel, identity of issues, the burden of proof used by the Magistrate Judge in CV 96-584 was the lower "probable cause" standard. The government must now meet the more exacting standard of proving its case by a preponderance of the evidence. "'Issues are not identical if the second action involves application of a different legal standard, even though the factual setting of both suits be the same.'" RecoverEdge L.P. v. Pentecost, 44 F.3d 1284, 1291 (5th Cir. 1995), *(quoting* 18 Wright, Miller & Cooper, Federal Practice and Procedure § 4417). Thus, the issues in the two cases are not identical. For these reasons, application of the doctrine of collateral estoppel is not available to Plaintiff in this case.

There are disputed issues of material fact as to the forfeitability of the Defendant Items of property. Plaintiff United States asserts that there is a nexus between the property and Mr. Juda's illegal drug activity because the property was acquired with proceeds from illegal drug crimes. Mr. Juda admits he was involved in illegal drug crimes, but he contends that he acquired the property at issue in this case with proceeds from a Canadian drug crime that had no nexus to the

9

United States.

Mr. Juda did admit at the October 16, 1998 hearing that the Canadian drug crime ultimately involved payment to him of a large sum of money in United States currency in Long Island, New York.[3] However, he disputes that the payment in the United States was part of the conspiracy to import drugs into Canada. Mr. Juda's theory is that the Canadian hashish conspiracy was complete with the payment to him in Canadian dollars in Canada. Nevertheless, he admits he later was paid again in the United States under a separate agreement with his "Canadian liaison," which agreement was not part of the Canadian drug conspiracy.[4]

My understanding of Plaintiff's theory is that the payment of money to Mr. Juda in the United States was part of a continuing conspiracy that involved the delivery of drugs in Canada, and was in fact the completion of the drug-trafficking conspiracy, thus making it a violation of the Controlled Substances Act. Plaintiff also alleges that Mr. Juda subsequently engaged in a series of activities in the United States to hide or to avoid detection of his receipt of illegal drug-trafficking proceeds. *See* Compl. ¶ 35(j) at 10.[5] The question, then, is whether the agreement between Mr. Juda and one of his co-conspirators in the Canadian drug crime by which Mr. Juda was paid in the United States in U.S. dollars (or any other activities engaged in by Mr. Juda in the

---

[3] The figure of $400,000 has been used. There is some confusion in the transcript as to whether the $400,000 figure was the amount in Canadian currency or the amount in United States currency.

[4] The record is unclear as to what happened to the Canadian money given to Mr. Juda in Canada. Apparently Mr. Juda either returned the Canadian money after he had accepted it, or he never accepted it in the first place.

[5] The Court is aware that in Juda v. Nerney, CV 96-584, the United States argued that property found in New Mexico is seizable and forfeitable "no matter where the illegal activity took place." Tr. of 10/16/98 hearing, at 110. The Court questions whether this is accurate where the property to be forfeited is proceeds of a crime that occurred outside the territorial jurisdiction of the United States. The Court requests the Plaintiff clarify its legal theory of the case in subsequent pleadings.

United States) constitutes a violation of the Controlled Substances Act within the meaning of 21 U.S.C. § 881(a)(6).

Notwithstanding that the findings and conclusions of the Magistrate Judge are not entitled to collateral estoppel effect, it is possible that this case may still be decided under Rule 56. The only issue seems to be whether there is a nexus between the property sought to be forfeited and a violation of the Controlled Substances Act. The Court may be able to decide that issue as a matter of law if the undisputed material facts are presented in proper form by the parties. The testimony of the witnesses who testified at the October 16, 1998 hearing in CV 96-584 (to the extent the testimony is not factually disputed), any admissions made by Mr. Juda in his Answer in this case or elsewhere, and additional affidavits, may all properly be used to support a new motion for summary judgment on the nexus issue.

THEREFORE IT IS ORDERED that Plaintiff's Motion for Summary Judgment Regarding the Right, Title, and Interest of Claimant Olaf Juda (Doc. No. 18) is denied.

IT IS FURTHER ORDERED that, within 30 days of the filing of this Memorandum Opinion and Order, Plaintiff may file a new motion for summary judgment supported by a statement of undisputed material facts of record, instead of by findings and conclusions made by the Magistrate Judge in Juda v. Nerney, CV 96-584.

_____
CHIEF UNITED STATES DISTRICT JUDGE